### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUZ E. ALVARADO,<br><br>      Plaintiff,<br><br>           v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>      Defendant. | CIVIL NO.: 11-1294 (MEL) |

### OPINION AND ORDER

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Luz Eneida Alvarado ("plaintiff" or "claimant") was born in 1946.  (Tr. 126). She completed high school and was employed as an office clerk at a financial institution for about 32 years, until she retired in December of 2004.  Tr. 23, 110, 131-36.  Plaintiff states that she suffers from an acute emotional condition, diabetes mellitus, high blood pressure, nasal allergies, and an ear condition.  Tr. 16.

On September 9, 2005, plaintiff filed an application for Social Security Disability Insurance benefits, alleging disability beginning on January 1, 2005.  Tr. 14, 108-10.  Plaintiff's application was denied initially as well as on reconsideration.  Tr. 14.  After plaintiff's timely request was granted, a hearing before an Administrative Law Judge ("ALJ") was scheduled for September 11, 2008.  Tr. 28.  Prior to the hearing, plaintiff waived the right to testify and submitted the case for a decision based on the evidence of record.  Tr. 14, 28-29.  On December 24, 2008, the ALJ rendered a decision denying plaintiff's claim.  Tr. 14-25.  The Appeals Council denied plaintiff's request for review on January 28, 2011; therefore, the ALJ's decision

became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). Tr. 1-4.

On March 28, 2011, plaintiff filed a complaint in this court seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), claiming that the ALJ's decision was not based on substantial evidence. Docket No. 1. On August 23, 2011, defendant filed both an answer and a certified transcript of the administrative record. Docket Nos. 11, 12. Both parties have filed supporting memoranda. Docket Nos. 19, 24.

## II. LEGAL STANDARD

Section 205(g) of the Social Security Act provides that a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

"In Social Security cases, the [c]ourt must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled with the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987). A claimant is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42. Step one requires the ALJ to determine whether the

3

claimant is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or "combination of impairments that is severe."  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, then disability benefits are denied.  20 C.F.R. § 404.1520(c).  Otherwise, the ALJ proceeds to step three to determine whether the claimant's impairment or impairments are equivalent to one of those listed in 20 C.F.R part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is conclusively presumed to be disabled. 20 C.F.R. § 404.1520(d); Berríos Vélez v. Barnhart, 402 F. Supp. 2d 386, 390 (D.P.R. 2005). If not, then the ALJ moves on to step four, to assess whether the claimant's impairment or impairments prevent her from doing the work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant can perform her past relevant work despite her impairment(s), then disability benefits are denied.  20 C.F.R. § 404.1520(f).  If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with her age, education, and work experience, allows her to perform any other work. 20 C.F.R. § 404.1520(a)(4)(v). If she can, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Under steps one through four, plaintiff has the burden of proving that she cannot return to her former job because of her impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir.1989) (per curiam).  Once she has carried

---

[1] An individual's residual functional capacity is the most that she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

4

that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

### III. THE ALJ'S FINDINGS

1. Plaintiff meets the insured status requirements of the Social Security Act through at least December 31, 2010.  Tr. 16.

2. Plaintiff has not engaged in substantial gainful activity since January 1, 2005, the alleged onset date. Tr. 16.[2]

3. Plaintiff has the following severe impairment: a major depressive disorder.  Tr. 16.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, subpart P, appendix 1. Tr. 17.

5. Plaintiff has the residual functional capacity to perform work at all exertional levels, as she has no exertional limitations or restrictions. Mentally, plaintiff retains the ability to learn, understand, and carry out simple instructions and tasks. Plaintiff can use judgment in making work related decisions; adapt and deal with changes in work settings and environments; sustain attention and concentration for at least two hour intervals and relates and interacts with others, such as co-workers, supervisors, and the general public. Tr. 19-23.

6. Plaintiff was born in September of 1946 and was 59 years old, which is defined as an individual with advanced age, on the alleged disability onset date. Tr. 23. She has a high school education and is not able to do past relevant work. Id.

---

[2] Plaintiff's earnings record shows posted earnings in 2005 in the amount of $21,719.54. These earnings are attributed to severance pay and are not earnings from substantial gainful work activity. Tr. 16, 125.

5

7. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that plaintiff is "not disabled," whether or not plaintiff has transferable job skills. Tr. 23.

8. Considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Tr. 23-24.

9. Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2005, her alleged onset date, through the date of the ALJ's decision, December 24, 2008. Tr. 24.

## IV. THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

The certified medical record contains, *inter alia*, the following medical evidence regarding plaintiff's conditions:

Plaintiff received private psychiatric treatment from Dr. José Alonso-Alonso between July 24, 1995, and September 8, 2008, for her depressive state, sadness, anhedonia, self-deprecatory state, and anguish. Tr. 65. She was also seeing Dr. Milagros Moreno-Irizarry between January 25, 1994, and September 8, 2008, for the treatment of diabetes mellitus, high blood pressure, anxiety, and obesity issues. Tr. 43-46. Plaintiff submitted medical records from the aforementioned treating physicians, consisting of treatment records, progress notes, laboratory test results, evaluations, and accompanying impressions. The record contains evaluations from two consulting psychiatrists, Dr. Elvira Giambartolomei and Dr. Manuel López Cruz, and two consulting internists, Dr. Alan H. Rapoport and Dr. Arturo Medina-Ruiz. Tr. 54-56, 192-98, 222-26, 235-39. Additionally, Dr. Jeanette Maldonado, a state agency psychiatrist,

reviewed plaintiff's file and completed a psychiatric review technique form and an RFC assessment. Tr. 204-17, 218-21.

1. **Mental impairments:**

Plaintiff noted in her disability report on February 8, 2008, that she takes Paxil and Zyprexa to treat her depression. Tr. 163-64. Plaintiff was also prescribed Xanax to relieve her anxiety. Tr. 65. Records from plaintiffs' treating psychiatrist are mostly illegible. Tr. 63. Those that are legible express that plaintiff suffers from depression, poor concentration, sadness, anhedonia, and isolation. Tr. 51-52, 54, 66. Records from plaintiff's visits to doctors also indicated that plaintiff is usually accompanied by a relative. Tr. 52, 54, 222. Dr. Alonso completed psychiatric reports on October 13, 2005, and September 8, 2008. Tr. 51-53, 65-66. Dr. Alonso diagnosed plaintiff with severe major depression in both reports. Tr. 53, 66. Dr. Alonso's first report stated that plaintiff is oriented when it comes to time, place, and person, but he noted in the second report that she has difficulty with these. Tr. 52, 66. On both dates, Dr. Alonso stated that plaintiff had problems with short-term memory, she was in a depressive state, and her judgment and insight were poor. Tr. 52-53, 66. He added in 2008 that she was experiencing auditory hallucinations but not visual ones. Tr. 66. In the second report, Dr. Alonso determined that plaintiff had a Global Assessment of Functioning ("GAF") of 53,[3] had a poor prognosis, and was unable to handle funds. Tr. 64, 66.

Plaintiff was evaluated by consulting psychiatrist Dr. Elvira Giambartolomei on December 21, 2005. Tr. 54. Dr. Giambartolomei found plaintiff "coherent, logical and

---

[3] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ["DSM–IV"], quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004). It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM–IV at 34 (brackets omitted), quoted in Echandy-Caraballo v. Astrue, 2008 WL 910059 at *4 n.7 (D.R.I. Mar. 31, 2008). A GAF between 51 and 60 "indicates the individual has '[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning . . . .'" Pate-Fires v. Astrue, 564 F.3d 935, 938 (8th Cir. 2009) (quoting DSM–IV at 32).

relevant." Tr. 55. She noted that plaintiff does not have delusions, phobias, compulsions, obsessions; has blockings and self-deprecatory ideas; denied having suicidal or homicidal thoughts; has anhedonia; and was anxious and depressed at the time of the evaluation. Tr. 54-56. She found plaintiff's remote memory adequate, "she remembered her birthday and the names of the ex-governors"; relating to recent memory: "she was able to remember events that occurred in the last 24 – 48 hours"; and relating to short term memory: "she was able to remember after five minutes one object out of the five mentioned." Id. Dr. Giambartolomei found plaintiff's judgment and insight to be acceptable, but noted that concentration and attention were diminished. Tr. 56. She related that plaintiff was able to subtract serial threes from one hundred. Id. Dr. Giambartolomei rendered a diagnosis of recurrent major depression with a GAF of 60. Id. Her prognosis was guarded and she believed plaintiff was able to manage funds. Id.

Plaintiff's medical records were evaluated by a state agency psychiatrist, Dr. Jeanette Maldonado, on March 1, 2006. Tr. 203-21. The mental residual functional capacity ("MRFC") assessment by Dr. Maldonado found that plaintiff was moderately limited in 9 out of 20 mental categories, with no significant limitations in 10 out of 20 categories. Tr. 218-19. Although the MRFC indicated that plaintiff is markedly limited in her ability to carry out detailed instructions, Dr. Maldonado concluded that medical evidence in the record demonstrates that plaintiff is able to understand, remember, and perform simple tasks; concentrate for more than two hour periods of time; tolerate supervision; and make work related decisions. Tr. 220. She noted that, because of plaintiff's depressive reactions, plaintiff could not perform complex tasks. Id.

On September 10, 2007, plaintiff was evaluated by consulting psychiatrist Dr. Manuel E. López Cruz. Tr. 222. Dr. López Cruz found plaintiff coherent and oriented in time, place, and person. Tr. 225. Plaintiff's flux of thought was normal, as was the tone of her voice. Id.

Plaintiff did not have blocks, delirious ideations, or ideas of reference. Id. Plaintiff's attitude was tense and anxious; she had a sad expression on her face, and expressed no emotions during the session. Id. Plaintiff's mood and affect were depressed. Id. Plaintiff claimed to hear voices calling her. Id. Plaintiff did not have panic attacks, and denied any sense of guilt or fear. Id. Plaintiff's immediate memory was poor, "recall[ing] one of the three objects." Tr. 225. Her recent memory was preserved, "recall[ing] today's breakfast and how she arrived." Id. Her remote memory was also preserved, "recall[ing] SSN, age and DOB." Id. at 226. Dr. López Cruz observed that plaintiff got confused when attempting to recite the months of the year backwards. Tr. 226. He also noted that plaintiff's attention/concentration was good during the session, but that plaintiff failed the test of subtracting serial sevens from a hundred on the first answer. Id. Dr. López Cruz rendered a diagnosis of major depressive disorder with psychotic features with a GAF of 40-31.[4] Id. He determined plaintiff's prognosis to be poor and stated that plaintiff was not able to handle funds. Id.

Following Dr. López Cruz's psychiatric evaluation, a re-assessment of the previous MRFC was requested. Tr. 227. The medical evidence was re-evaluated by psychiatric specialist Dr. Carlos Vázquez on November 8, 2007. Tr. 234. He concluded that the medical evidence in the record still sustained the MRFC assessment made by Dr. Maldonado and recommended that they be adopted. Id.

### 2. Other impairments:

The record shows that plaintiff is prescribed Metformin to treat her diabetes and Lipitor for her high cholesterol. Tr. 163. Records from Dr. Milagros Moreno-Irizarry indicate that plaintiff suffers from obesity, high blood pressure, hypercholesterolemia, and diabetes mellitus.

---

[4] A GAF between 31 and 40 is "characterized by some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Halverson v. Astrue, 600 F.3d 922, 927 n.5 (8th Cir. 2010) (citing DSM–IV at 34).

Tr. 46, 73-76.  Dr. Moreno-Irizarry mentions that plaintiff is responding to treatment and following a diet.  Tr. 45.  Dr. Moreno-Irizarry rendered a guarded prognosis.  Tr. 46.

On December 19, 2005, plaintiff was examined by consulting internist Dr. Arturo Medina-Ruiz who confirmed Dr. Moreno-Irizarry's diagnosis of diabetes, obesity, and high cholesterol.  Tr. 192-94.  On December 14, 2007, she was evaluated by consulting internist Dr. Alan H. Rapoport, who also confirmed a diagnosis of diabetes, high blood pressure, and obesity.  Tr. 235-36.  Dr. Rapoport noted in his report that plaintiff "is able to sit, stand, walk, lift, carry, handle objects, see, hear, speak, travel and do some household chores."  Tr. 236.

## V. LEGAL ANALYSIS

The findings of the ALJ reflect an application of step five of the sequential evaluation process in which the ALJ evaluates whether the claimant's RFC, combined with her age, education, and work experience, allows her to perform any other work.  See 20 C.F.R. § 404.1520(g).  The ALJ established that plaintiff's mental impairments limit her ability to do past "semi-skilled" work but that these limitations have "little to no effect on the occupational base of unskilled work at all exertional levels."  Tr. 24.  The ALJ then determined that a finding of "not disabled" was appropriate under section 204.00 of the Medical-Vocational Guidelines.  Id.  He stated that mental demands of unskilled work required "the ability (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and unusual work situations; and to deal with changes in a routine work setting."  Id. The ALJ concluded that plaintiff's mental impairment did not significantly compromise her occupational base and that she had the ability to comply with the non-exertional requirements of these activities.  Id.  The ALJ thus relied on the medical-vocational rules ("the Grid") to meet his

burden of proof that work plaintiff is capable of doing exists in significant numbers in the national economy. Id.

Plaintiff contends that the ALJ should not have applied the Grid in light of the fact that a severe non-exertional impairment is present. Docket No. 19, at 6-26. Plaintiff argues that the ALJ should have consulted a vocational expert to meet his burden of proving the existence of jobs in the national economy that plaintiff can perform. Id. In support of this argument, plaintiff contends that the record shows that plaintiff's mental impairments are of a severe enough nature to preclude reliance on the Grid. Id. at 19. Defendants argue that plaintiff's mental impairment is only severe enough to limit her range of work from semi-skilled to unskilled and that sufficient evidence exists in the record to show that plaintiff's mental limitations have little effect on the occupational base of unskilled work at all exertional levels. Tr. 24; Docket No. 24, at 8.

The Grid is designed to help the Commissioner at step five determine if jobs exist in the national economy for a given claimant "in a streamlined fashion without resorting to the live testimony of vocational experts." Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989). The rules reflect "major functional and vocational patterns" based on data about the jobs existing in the national economy. 20 C.F.R. § 404.1569. Each rule directs a finding of "disabled" or "not disabled" based on the particular combination of the claimant's physical RFC (light work, medium work, heavy work, or very heavy work) and vocational factors (age, education, and work experience). 20 C.F.R. §404, subpart P, app. 2 § 200.00(a). Because the rules only take into account "limitations in meeting the strength requirements of jobs," known as "exertional limitations," they are not conclusive where the claimant has other limitations not related to strength, known as "non-exertional limitations." 20 C.F.R. §404, subpart P, app. 2 §

200.00(e).[5]  When a claimant has both exertional and non-exertional limitations, and the Grid does not direct a finding of disability, the regulations indicate that the rule reflecting the claimant's age, education, work experience, and RFC should be used "as a framework" for determining the extent to which the non-exertional impairments deplete the number of potential jobs that the claimant can perform.  20 C.F.R. §404, subpart P, app. 2 § 200.00(e)(2).  In such cases, whether the ALJ can rely on the Grid depends on how much the non-exertional impairments reduce the potential job base at the relevant exertional level.  Ortiz, 890 F.2d at 524; Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194 (1st Cir. 1987).  Interpreting this regulation, the First Circuit has held that an ALJ can rely on the Grid if the non-exertional impairments reduce the occupational base only "marginally."  Ortiz, 890 F.2d at 524.

Here, the ALJ found that plaintiff's mental impairment limits her ability to engage in non-exertional work at no more than moderate levels.  Tr. 23.  The ALJ indicated that plaintiff's depression merely affected the occupational skill level at which she could perform, limiting her to unskilled work.  Tr. 24.  He observed that plaintiff "is a logical, coherent, relevant, and fully oriented person, who is spontaneous, and whose capacity for maintaining attention and concentration for simple tasks remains unchanged."  Id.  Defendant thus argues that the ALJ sufficiently considered plaintiff's mental impairment by limiting her to a specific skill level and concluding that, at the level of unskilled work, plaintiff could perform the full range of work. Docket No. 24, at 7-8.

In Ortiz, the court held that "such a shorthand approach" was indeed permissible in applying the Grid, but only if "the factual predicate (that the claimant's [mental condition] does not interfere more than marginally with the performance of the full range of unskilled work) is

---

[5] Examples of non-exertional limitations are mental functions, such as concentration and attention, or postural restrictions, such as bending, climbing, or crouching.  20 C.F.R. § 404.1569a(c).

amply supportable." 890 F.2d at 526. This inquiry involves two separate determinations: whether, in light of his mental limitations "(1) a claimant can perform close to the full range of unskilled work, and (2) whether [s]he can conform to the demands of a work setting, regardless of the skill level involved." Id. In applying this inquiry to the case of a claimant with dysthymic disorder (chronic depression) and a restricted ability to bend from the waist, the Ortiz court found the question to be a "close one" and noted that that it was an "unusual instance where reliance on the Grid is permissible despite the existence of a significant non-exertional limitation," but, "on balance" found the ALJ's reliance on the Grid supportable. Id. at 528. The question here is also a close one. There is ample evidence in the record showing that plaintiff retained the skills to perform close to the full range of unskilled work. The record is less clear, however, with respect to plaintiff's ability to conform to the demands of the work setting in general.

With respect to the first step of the Ortiz inquiry, the record does clearly show that plaintiff has the skills to perform the full range of unskilled work. "The basic mental demands of … unskilled work include the abilities (on a sustained basis) to 'understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" Id. at 526 (citing Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (S.S.A. 1985)). Determining whether an individual can perform this work "requires careful consideration of RFC." Id. In making his finding as to plaintiff's mental RFC, the ALJ relied on the opinions of the consulting and state agency psychiatrists. Tr. 19-23. He found that, throughout the record, plaintiff remained the informant of her condition, and that this is indicative of a person capable of providing information, answering questions, and relating adequately to others. Tr. 18. He noted that

13

plaintiff does not have concentration problems, and that this is demonstrated by plaintiff's ability to recall her past work history, her current medical condition, her family situation, and her activities of daily life. Tr. 21-22. The ALJ also observed that plaintiff had not suffered from extended periods of decompensation, nor experienced exacerbation in symptoms requiring hospitalization, alteration of medicine, or placement in a highly supported living arrangement. Tr. 18. Although the ALJ had no doubt that plaintiff suffered from a severe mental impairment, he found that this impairment only imposed moderate restrictions on plaintiff's activities of daily living; with the notable exception of marked restrictions in her ability to understand and follow *complex* instructions. Tr. 22. This marked restriction does not affect the range of unskilled work that plaintiff can perform.

These observations by the ALJ are based on substantial evidence in the record. Plaintiff's self-diagnostic function report from March 4, 2007, states that she is capable of driving, interacting socially with friends and neighbors, doing chores and housework, taking care of her own personal needs, paying bills, handling money, and getting along with authority figures. Tr. 37-42. All of the doctors who interviewed plaintiff concluded that she was a logical, coherent, relevant and well oriented person. Tr. 52, 56, 225. The consulting psychiatrists, both of whom examined plaintiff, noted that plaintiff had good judgment and insight, although the treating psychiatrist disagreed. Tr. 53, 56, 66, 226. Consulting psychiatrist Dr. Giambartolomei noted that plaintiff's concentration and attention appeared diminished, but consulting psychiatrist Dr. López Cruz observed that plaintiff had good concentration throughout the interview. Tr. 56, 226. Furthermore, Dr. Maldonado, the non-examining state agency psychiatrist who analyzed plaintiff's medical evidence and was affirmed by Dr. Vázquez, concluded that plaintiff was able to "understand, … remember and … perform simple tasks within the weekly demands of pace,"

and "concentrat[e] for more than two hours period," but was unable to perform complex tasks. Tr. 220. Taking all these factors into consideration, it was reasonable for the ALJ to conclude that plaintiff's mental impairments did not limit her ability to perform a full range of unskilled work.

The second prong of the Ortiz inquiry requires an assessment of whether a claimant can "accommodate to the demands of a work setting" without consideration of her skill level. 890 F.2d at 527. The Commissioner has recognized that "the mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day." Id. (citing SSR 85-15 at 6). Accordingly, he has "emphasized the importance of thoroughness in evaluation on an individual basis" of how an "individual's response to [the] demands of work" affects her RFC. SSR 85-15 at 6. The ALJ's decision reflects little of the individualized analysis that the Commissioner's ruling contemplates.

In this case, however, the evidence of record does not show that plaintiff's mental condition had more than a marginal effect on her ability to adapt to the work setting. Plaintiff stated that she woke up every day around 8:30 A.M., washed, and spent time with her sister; punctually kept her medical appointments; and stayed busy during the day by doing "any small thing." Tr. 37. She would visit her sister and cousin, had friends, interacted with neighbors, did not get upset when people visited her, and interacted with others with activities. Tr. 55; see also Tr. 224. These are consistent with her psychiatric evaluations, which stated that she was punctual, well-kept, and interacted socially with others. Tr. 54, 64, 66, 224.

Dr. Alonso observed that plaintiff had become irritable and experienced auditory hallucinations and illogical thoughts; all of these symptoms could affect plaintiff's ability to

15

adapt to a new work setting. Tr. 65-66. The ALJ chose to give reduced weight to Dr. Alonso's findings, however, because they were internally inconsistent; did not recommend hospitalization, emergency treatment, or a supportive living environment due to the severity of claimant's conditions; and were not consistent with the rest of the evidence of record. Tr. 21. For example, in the same evaluation where Dr. Alonso claimed plaintiff was experiencing illogical thoughts, he stated in a later section that plaintiff's thoughts were "coherent and logical." Id. He also stated that plaintiff had difficulty with time, place, and person, which contradicts Dr. López Cruz's and Dr. Giambartolomei's conclusions. Tr. 56, 66, 225. Additionally, when Dr. Alonso stated that plaintiff was experiencing auditory hallucinations, he offered no details relating to their type or frequency nor an assessment of their severity. Tr. 66. Furthermore, Dr. Giambartolomei noted that plaintiff did not hallucinate. Tr. 55. Although the record shows that plaintiff suffered from sadness and depression, the effect that these symptoms had on plaintiff's ability to adapt to work environment appears to be slight. For the most part, the record shows that plaintiff was hygienic, communicative, functional, independent, oriented, and sociable, and she experienced no severe behavioral impairments (delusions, phobias, obsessions, suicidal/homicidal tendencies, etc.). Tr. 37-41, 54-56, 222-26. For these reasons, the ALJ had discretion to assign less weight to Dr. Alonso's observations and conclusions.

The ALJ noted that he also found Dr. López Cruz to be less convincing than Dr. Giambartolomei, particularly concerning the GAF of 40-31 that Dr. López Cruz assigned to plaintiff. Tr. 21. The ALJ pointed out that plaintiff was the informant throughout the record, providing information and answering questions; had no difficulties with concentration; and gave a full history of past work, medical conditions, family situation, and activities of daily living. Tr. 21-22. Rather, the ALJ determined that Dr. Giambartolomei's GAF of 60 was more consistent

with the record.  Tr. 22.  Furthermore, the ALJ noted that plaintiff had been "respond[ing] to medications and treatment."  Id.

There was substantial evidence to support the ALJ's conclusion that plaintiff was able to accommodate to the demands of the workplace.  Thus, there is no indication that plaintiff's mental condition affected the unskilled occupational base more than marginally.  Although the ALJ should typically err on the side of taking vocational evidence, see Ortiz, 890 F.2d at 528, under these circumstances, the ALJ's reliance on the Grid was appropriate.

## VI. CONCLUSION

Based on the foregoing analysis, the Court concludes that the Commissioner's decision was based on substantial evidence.  Therefore, the Commissioner's decision is AFFIRMED.

In San Juan, Puerto Rico, this 28th day of September, 2012.

s/Marcos E. López  
U.S. Magistrate Judge